Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Stephen P. DeNittis, Esq. (*pro hac vice* to be submitted)
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com

*Attorneys for Plaintiffs
and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA-MCKINLEYVILLE DIVISION

| | |
|---|---|
| ANNETTE BAKER, JEFF LAMOREE, and KATHRYN MAJOR, For Themselves, As Private Attorneys General, and On Behalf Of All Others Similarly Situated, | Case No. 1:22-cv-04346 |
| | **CLASS ACTION COMPLAINT** |
| | **(1) VIOLATION OF CAL. CIVIL CODE § 1750;** |
| Plaintiffs, | **(2) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17500;** |
| v. | **(3) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200** |
| CEBRIDGE TELECOM CA, LLC (D/B/A SUDDENLINK AND OPTIMUM); and ALTICE USA, INC. | **JURY TRIAL DEMANDED** |
| Defendants. | |

## **TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY ................................................................................. - 1 -

THE PARTIES ............................................................................................................... - 2 -

JURISDICTION AND VENUE ........................................................................................ - 2 -

FACTUAL ALLEGATIONS OF ALTICE'S BAIT AND SWITCH SCHEME ................... - 3 -

    A.    Altice Made False and Misleading Statements About the Prices of Its Television Service Plans When Customers Signed Up............................. - 4 -

    B.    Altice Continued to Deceive Customers After They Signed Up. ................... - 6 -

    C.    The Broadcast Station Programming Surcharge and the Sports Programming Surcharge Are Double-Charges for Service........................... - 7 -

    D.    Customers Could Not Cancel Without Penalty............................................... - 8 -

PLAINTIFFS' FACTUAL ALLEGATIONS ..................................................................... - 9 -

CLASS ALLEGATIONS................................................................................................ - 17 -

CAUSES OF ACTION .................................................................................................. - 21 -

    COUNT I: Violation of the Consumers Legal Remedies Act ("CLRA") California Civil Code § 1750 *et seq*................................................................. - 21 -

    COUNT II: Violation of California's False Advertising Law California Business and Professions Code § 17500 *et seq*........................... - 25 -

    COUNT III: Violation of California's Unfair Competition Law California Business and Professions Code § 17200 *et seq*........................... - 27 -

PRAYER FOR RELIEF.................................................................................................. - 30 -

DEMAND FOR JURY TRIAL........................................................................................ - 31 -

Plaintiffs Annette Baker, Jeff Lamoree, and Kathryn Major, individually, as private attorneys general, and on behalf of all others similarly situated, allege as follows, on personal knowledge and investigation of their counsel, against Defendant Cebridge Telecom CA, LLC (d/b/a Suddenlink and Optimum[1]) and Defendant Altice USA, Inc. (collectively, "Altice"):

## INTRODUCTION AND SUMMARY

1.    This case challenges a deceptive pricing scheme perpetrated by Altice against its California television service customers. For years, Altice prominently advertised its Suddenlink-branded television service plans[2] at particular, flat monthly rates that were locked in for a promotional period or term contract, without disclosing or including two additional service charges—a "Broadcast Station Programming Surcharge" and a "Sports Programming Surcharge[3]."

2.    The Broadcast Station Programming Surcharge and the Sports Programming Surcharge were not taxes or government fees. Rather, they were disguised double-charges for Altice's television service. These service charges were set by and entirely in the control of Altice.

3.    Altice utilized the Broadcast Station Programming Surcharge and the Sports Programming Surcharge to: (1) charge more per month for the television service itself without having to advertise the higher prices; and (2) as a way to covertly increase customers' rates, even during their promised fixed-rate promotional period or term contract.

4.    Through this fraudulent scheme Altice extracted from its California subscribers millions of dollars in the past several years in Broadcast Station Programming Surcharges and Sports Programming Surcharges.

---

[1]    On August 1, 2022, Defendants are changing the brand name under which they operate and advertise in California to "Optimum," instead of "Suddenlink."

[2]    The term "television service plan" as used in this Complaint includes a service plan that "bundles" television with other services such as internet or telephone.

[3]    The "Broadcast Station Programming Surcharge" was previously called the "Broadcast Station Surcharge." At some point, Altice added the word "Programming" to the name. This Complaint will refer to the surcharge using its most recent name, the "Broadcast Station Programming Surcharge."

CLASS ACTION COMPLAINT

5.      Plaintiffs, by this action, seek a public injunction for the benefit of the general public to enjoin Altice from engaging in the alleged unlawful advertising scheme in the future.

6.      Plaintiffs further seek, on behalf of themselves and a class of similarly situated California consumers, restitution, pre- and post-judgment interest, and declaratory relief such that Altice's practices alleged herein are declared as unlawful under California law. Plaintiffs also seek attorneys' fees and costs.

## THE PARTIES

7.      Plaintiff Annette Baker is a citizen and resident of Humboldt County, California.

8.      Plaintiff Jeff Lamoree is a citizen and resident of Humboldt County, California.

9.      Plaintiff Kathryn Major is a citizen and resident of Humboldt County, California.

10.     Defendant Altice USA, Inc., is a corporation chartered under the laws of Delaware, with its principal place of business in New York.

11.     Defendant Cebridge Telecom CA, LLC is a limited liability company chartered under the laws of Delaware, with its principal place of business in New York.

## JURISDICTION AND VENUE

12.     **Subject Matter Jurisdiction**. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from the Defendants.

13.     **Personal Jurisdiction**. This Court has personal jurisdiction over Altice because, without limitation, Altice: (1) has purposely availed itself of the privileges of conducting business activities in California; (2) currently maintains systematic and continuous business contacts with California including marketing, selling, and issuing cable television and internet services to Plaintiffs and other California consumers; and (3) maintains offices and retail locations throughout California. Altice has sufficient minimum contacts with California to render the exercise of jurisdiction by this Court permissible.

14.     **Venue**. Venue is proper pursuant to 28 U.S.C. §1391 because Plaintiffs reside in

CLASS ACTION COMPLAINT

this District; many of the acts and transactions giving rise to this action occurred in this District; Altice is authorized to conduct business in this District, has intentionally availed itself of the laws and markets within this District through distribution and sale of its services in this District, does substantial business in this District, and is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS OF ALTICE'S BAIT AND SWITCH SCHEME

15.    Altice provides internet, television, and telephone services to approximately 100,000 households in California under the "Suddenlink" brand name.[4] Many of Altice's customers subscribe to television; many also subscribe to internet and/or telephone services as part of a "bundled" television service plan. (The term "television service plan" as used in this Complaint includes a service plan that "bundles" television with other services such as internet or telephone.)

16.    At all relevant times, Altice has aggressively advertised its television service plans through pervasive marketing directed at the consuming public in California. This marketing has included advertisements on its website; other internet advertising; materials and advertising at its California retail stores including in the cities of Eureka, Truckee and Bishop where customers can sign up for Altice services; and video advertisements via YouTube, Facebook, and Twitter.

17.    Throughout all of these channels, Altice for years prominently advertised all of its television service plans at particular, flat monthly prices that were locked-in for a promotional period of 1 year or longer, without disclosing or including additional television service charges—a "Broadcast Station Programming Surcharge" and a "Sports Programming Surcharge."

18.    For years, Altice padded all of its television subscribers' bills with a monthly charged it called the "Broadcast Station Programming Surcharge." By 2021, the Broadcast Station Programming Surcharge was $15.00 per month. Altice buried the Broadcast Station

---

[4]    On August 1, 2022, the "Suddenlink" brand name will be changed to "Optimum."

Programming Surcharge in the "Taxes, Fees & Other Charges" section of the Suddenlink bill where it was lumped together with legitimate taxes and government-related fees. Altice did not define or explain the Broadcast Station Programming Surcharge anywhere on the bill.

19.     The Sports Programming Surcharge is another monthly television service charge that Altice began adding to its Suddenlink bills in 2015 at a rate of $3.00 a month. By 2021, the Sports Programming Surcharge was $6.65 per month. Altice similarly buried the Sports Programming Surcharge in the "Taxes, Fees & Other Charges" section of the bill where it was lumped together with legitimate taxes and government-related fees. Altice did not define or explain the Sports Programming Surcharge anywhere on the bill.

20.     All members of the putative class were charged the Broadcast Station Programming Surcharge (which was uniformly charged to all Suddenlink television subscribers), and most members of the putative class were also charged the Sports Programming Surcharge (which was charged to Suddenlink television subscribers with Standard Cable or higher, who comprised the overwhelming majority of the subscribers).

21.     Altice utilized the Broadcast Station Programming Surcharge and the Sports Programming Surcharge as part of a deceptive fees scheme whereby Altice (a) advertised and promised a lower monthly price for its television service plans than it actually charged, and then (b) surreptitiously increased the monthly service rate for its customers, including in the middle of promised fixed-rate promotional periods, by increasing the amounts of the Broadcast Station Programming Surcharge and/or the Sports Programming Surcharge.

22.     Based on Plaintiffs' calculations, through this bait-and-switch scheme Altice has extracted tens of millions of dollars in Broadcast Station Programming Surcharges and Sports Programming Surcharges from their California subscribers.

A.     **Altice Made False and Misleading Statements About the Prices of Its Television Service Plans When Customers Signed Up.**

23.     On its Suddenlink website, Altice explicitly advertised and represented to consumers that the advertised prices for its television service plans included all of the monthly service charges, and that the monthly rate would be fixed during the specified promotional

period or term contract. Altice did not disclose or adequately disclose the existence or the amount of the Broadcast Station Programming Surcharge or Sports Programming Surcharge (let alone their true nature or basis) prior to or at the time customers signed up for service. Additionally, Altice did not disclose or adequately disclose the fact that it could and would increase the monthly price during the customer's locked-in rate period or contract by simply increasing one or more of these hidden and disguised service charges.

24.     Altice engaged in the same misrepresentations and nondisclosures with consumers whether they signed up over the phone, via internet chat, or at one of Altice's Suddenlink brick-and-mortar stores. Altice's sales and customer service agents quoted the same flat monthly prices as in Altice's public advertising, which excluded the amounts of the Broadcast Station Programming Surcharge and the Sports Programming Surcharge.

25.     Altice's uniform policy and practice was for its Suddenlink sales agents (including telesales agents and in-store sales staff) to: (1) not disclose or mention the existence of the Broadcast Station Programming Surcharge and the Sports Programming Surcharge; and (2) quote prices for its television service plans which *excluded* the amounts of the Broadcast Station Programming Surcharge and the Sports Programming Surcharge.

26.     When Altice agents quoted customers the total order price (which excluded the amounts of the Broadcast Station Programming Surcharge and the Sports Programming Surcharge), the most they would say, if anything, about any additional charges was that the quoted price was the total "plus taxes" or "plus taxes and fees." A reasonable consumer would interpret the phrase "taxes and fees" to mean government or regulatory charges, as opposed to double-charges to provide the same television channels that were promised in the quoted television service plan price.

27.     Discovery will show that Altice had a uniform, standard policy of directing its sales agents to not mention or disclose the existence of the Broadcast Station Programming Surcharge and the Sports Programming Surcharge or their amounts, and to at most mention (if at all) that the advertised price was the total monthly service price plus "taxes" or "taxes and fees."

28.     Altice sales agents were likewise trained to push promotional offers by promising customers that the advertised service rates were guaranteed not to increase during the promotional period. Altice regularly advertised 12-month fixed-price promotions. These representations of fixed television service rates were false because Altice in fact reserved the right to, intended to, and did, increase its service prices during the promotional period by increasing the Broadcast Station Programming Surcharge and the Sports Programming Surcharge.

**B.      Altice Continued to Deceive Customers After They Signed Up.**

29.     Altice continued to deceive its customers about the Broadcast Station Programming Surcharge and the Sports Programming Surcharge, and the true monthly price of its television service plans, even after the customers signed up and were paying for the services.

30.     The first possible chance customers could have learned about the Broadcast Station Programming Surcharge and the Sports Programming Surcharge was after receiving their first Suddenlink bill, and by that time they were already committed to their purchase.

31.     Moreover, far from constituting even a belated disclosure, the monthly billing statements served to further Altice's scheme and deception. The bill deceptively presented the Broadcast Station Programming Surcharge and the Sports Programming Surcharge as charges separate from the service, even though they were in fact double-charges for the same channels promised in the service plan price. Altice buried the Surcharges in the "Taxes, Fees & Other Charges" section of the bill, lumped together with purported taxes and government charges. This misleadingly told Altice's customers that the Broadcast Station Programming Surcharge and the Sports Programming Surcharge were taxes or other legitimate government fees, when they were in fact disguised television service charges.

32.     Altice did not define or explain the Broadcast Station Programming Surcharge or the Sports Programming Surcharge anywhere on its billing statements. Even worse, the only explanation about "fees" on the customer bill that Altice did provide indicated that all fees on the bill were government-related. In the fine print of the Suddenlink bill, under "Billing Information," Altice stated: "Your bill includes all government fees. TV Taxes and Fees

includes an FCC fee and payments required under Altice's franchise agreement to support public, educational or government channels. Taxes and Fees are subject to change."

33.     Thus, even if a customer noticed the Broadcast Station Programming Surcharge and the Sports Programming Surcharge on the bill, the customer would reasonably assume—just as Altice intended—that the Surcharges were legitimate government taxes or fees outside of Altice's control.

### C.     The Broadcast Station Programming Surcharge and the Sports Programming Surcharge Are Double-Charges for Service.

34.     Deep within Altice's Suddenlink website—where, by design, it was unlikely to be viewed by consumers, and certainly not before they purchased their service plans—Altice admitted that the Broadcast Station Programming Surcharge and the Sports Programming Surcharge were double-charges for its television service. These buried admissions reinforce the fact that these undisclosed charges should have been included in the advertised monthly price for the television service because they are basic costs of providing the service itself. A reasonable consumer would expect the advertised price for the television service to include all costs necessary to provide said service.

35.     Altice had a page on its Suddenlink website titled "Understanding the Fees on Your Bill," where Altice admitted that the Broadcast Station Programming Surcharge and the Sports Programming Surcharge are double-charges for television service. On this page, Altice called the Broadcast Station Programming Surcharge the "Broadcast Basic Surcharge" and stated that the charge "is related to the incremental costs charged by the programmers for the rights to distribute the broadcast TV networks included in your TV package like ABC, CBS, Fox and NBC. This fee applies to all customers with TV Service through Suddenlink, as these channels are included in all packages." (emphasis added).

36.     On this same page, Altice stated that the Sports Programming Surcharge "is related to the incremental costs charged by the programmers for the rights to distribute the sports programming included in many of our TV packages. This fee applies to all customers receiving any package above Local Broadcast, as all the TV packages include several sports

CLASS ACTION COMPLAINT

networks." (emphasis added).

37.     Altice admitted that the Broadcast Station Programming Surcharge and the Sports Programming Surcharge were to cover costs to distribute channels that were *already* "included in your TV package." A consumer would reasonably expect the cost of supplying television channels that were part of their service plan to be *included* in the basic monthly rate Altice advertised for the television service itself.

**D.     Customers Could Not Cancel Without Penalty.**

38.     If customers realized that their actual total monthly bill was higher than promised when they received their monthly billing statements, they could not simply back out of the deal without penalty or cost, even if they noticed the Broadcast Station Programming Surcharge and the Sports Programming Surcharge overcharges on their very first statement.

39.     First, Altice's 30-Day Money Back Guarantee *excluded* the Broadcast Station Programming Surcharge and the Sports Programming Surcharge. According to Altice's Suddenlink website: "30-day money back is only on the monthly service fee," i.e., only on the base price of the service.[5]

40.     Second, most customers were required to pay a one-time non-refundable installation charge on sign-up, which could be as much as $59.00.

41.     Third, Altice's Suddenlink Residential Services Agreement had an "Early Termination Fees" provision, which stated at Section 5: "If you cancel, terminate or downgrade the Service(s) before the completion of any required promotional term to which You agreed ('Initial Term'), you agree to pay Suddenlink any applicable early cancellation fee plus all outstanding charges for all Services used and Equipment purchased for which you have not paid us prior to termination."[6] This indicated to customers that if they terminated service prior to end of their promotional fixed-price period, they may be subject to a "cancellation fee."

42.     Fourth, Altice did not pro-rate cancellations. Thus, customers were charged for

---

[5] *See* https://www.suddenlink.com/promotion-offer-disclaimers (last accessed July 13, 2022).
[6] *See* https://www.suddenlink.com/residential-services-agreement (last accessed July 13, 2022).

CLASS ACTION COMPLAINT

the cost of the *entire* month even if they cancelled on the very first day of the service month.[7]

43.     Fifth, customers may also have rented or purchased equipment to use exclusively with Altice's services, such as digital cable converter boxes and internet modems and wireless routers.

44.     Altice's installation fee, refusal to provide a full refund despite the purported 30-day money back guarantee, refusal to pro-rate cancellations, and early termination fee were designed by Altice to penalize and deter customers from cancelling after signing up. And Altice's policies were deliberately and knowingly designed by Altice to lock customers in if and when they deduced that they were being charged more per month than advertised for Altice's internet services.

## PLAINTIFFS' FACTUAL ALLEGATIONS

**Plaintiff Annette Baker**

45.     Plaintiff Annette Baker is currently an Altice subscriber in Eureka, California. At all relevant times, Ms. Baker has been a citizen and resident of Humboldt County, California.

46.     In 2007, Ms. Baker called Altice to learn about Suddenlink television, internet, and phone service plans for her new residence in Eureka, California.

47.     The Altice sales agent that Ms. Baker spoke with told her about one of Altice's Suddenlink service plans which bundled television, internet, and phone. The sales agent quoted Ms. Baker a flat monthly price that was fixed for a promotional period.

48.     Based on these representations, Ms. Baker reasonably believed that the quoted promotional price for the bundled service plan would be the full price she paid for television, internet, and phone services, and that the price for these services would not increase during the promotional period.

49.     At no point during the phone call did the Altice sales agent disclose to

---

[7] The Residential Services Agreement states: "PAYMENTS ARE NONREFUNDABLE AND THERE ARE NO REFUNDS OR CREDITS FOR PARTIALLY USED SUBSCRIPTION PERIODS. … Any request for cancellation after the commencement of a service period will be effective at the end of the then-current service period."

Ms. Baker that Altice would or might later add a Broadcast Station Programming Surcharge on top of the advertised and promised monthly price.

50. Based on the Altice sales agent's representations, Ms. Baker ordered the Suddenlink bundled service plan for television, internet, and phone. The television portion of her service plan was the most basic television plan that Altice offered, now called "Local Broadcast." Because Ms. Baker subscribed to Local Broadcast, she was only charged the Broadcast Station Programming Surcharge, not the Sports Programming Surcharge.

51. At first, Ms. Baker did not notice the Broadcast Station Programming Surcharge because it was initially less than a dollar and its first few increases were relatively small. It wasn't until the surcharge was increased significantly in recent years that Ms. Baker noticed it. However, when Ms. Baker eventually noticed the surcharge, which was listed under "Taxes, Fees & Other Charges" on her bill, she reasonably assumed and believed that it was some sort of tax or government fee that was outside of Altice's control.

52. Ms. Baker did not know, and Altice never told her, that the Broadcast Station Programming Surcharge was in fact a television service charge for the same service that she was already paying for.

53. From 2007 through 2021, Ms. Baker did not make any material changes to her bundled services.

54. In early 2021, Ms. Baker called Altice to try to reduce her Suddenlink monthly bill. When Ms. Baker first asked the Altice agent if there was any way to reduce her bill, the agent responded that her bill increases were outside of Altice's control and that there was nothing the agent could do for her. Ms. Baker then told the agent that she would like to remove television service from her Altice services package—leaving only internet—in order to reduce her bill. The agent then offered her a new promotional rate for her service plan. However, the quoted rate did not include the Broadcast Station Programming Surcharge—which at that point was an additional $15.00 per month. The agent did not mention the existence of the Broadcast Station Programming Surcharge.

55. Ms. Baker was not aware that Altice would bill her an additional $15.00

monthly television service charge above the promised and quoted service plan price. And, because Altice listed the Broadcast Station Programming Surcharge under "Taxes Fees, & Other Charges," Ms. Baker continued to reasonably believe that it was simply another tax or government fee that was outside of Altice's control.

56.    When Ms. Baker signed up for Altice's Suddenlink services, and when she signed up for another promotional period, she was relying on Altice's prominent representations regarding the flat, fixed rate for her television service plans. Ms. Baker did not expect (and Altice did not tell her) that Altice would actually charge more for its television service through the imposition of a disguised service charge—the Broadcast Station Programming Surcharge. This information would have been material to Ms. Baker. If Ms. Baker had known that information, she would not have been willing to pay as much for her television service plans, and she would have acted differently.

57.    Ms. Baker seeks recovery of the full amount of the Broadcast Station Programming Surcharges charged to her by Altice.

58.    Ms. Baker has a legal right to rely now, and in the future, on the truthfulness and accuracy of Altice's representations and advertisements regarding its service plan prices.

59.    Ms. Baker continues to subscribe to the same Suddenlink service plan. Ms. Baker desires to sign up for different Altice television service plans in the future and/or sign up for another fixed-price promotional period or term contract (e.g., where Altice promises a discounted and fixed service price for a specified period of time). However, Ms. Baker wants to be confident that the advertised and quoted price for Altice's television service plans is the true and full price for the services (i.e., that it includes all applicable discretionary monthly service charges). Ms. Baker also wants to be confident that Altice is not going to increase the service price during any promised fixed-price period or contract by imposing or increasing discretionary and disguised monthly service charges such as the Broadcast Station Programming Surcharge or the Sports Programming Surcharge. And, if Altice introduces any new discretionary monthly service charge, Ms. Baker wants to be confident that Altice will include the amount of that service charge in the advertised and quoted service plan price. Ms.

Baker will be harmed if, in the future, she is left to guess as to whether Altice's representations are accurate and whether there are omissions of material facts regarding the service plans being advertised and represented to her.

**Plaintiff Jeff Lamoree**

60.     Plaintiff Jeff Lamoree is an Altice subscriber in Eureka, California. At all relevant times, Mr. Lamoree has been a citizen and resident of Humboldt County, California.

61.     When Mr. Lamoree initially signed up for television services, it was with a different service provider—Cox Communications. Mr. Lamoree had signed up for a Cox television, internet, and phone bundled service plan. Later, Altice bought the rights to the service area from Cox, taking over both Cox's infrastructure and its subscribers in the area. Cox subscribers transitioned to being Suddenlink-branded subscribers without any changes to the content or price of their service plans.

62.     When Mr. Lamoree initially signed up for his service plan with Cox, Cox did not charge any hidden television service fees. And when Altice took over from Cox, Altice likewise did not charge any hidden television service fees. At no point before or after Altice became Mr. Lamoree's service provider did Altice disclose to Mr. Lamoree that Altice would or might later add a Broadcast Station Programming Surcharge and a Sports Programming Surcharge on top of the advertised and promised monthly service price.

63.     Mr. Lamoree did not notice when Altice first began sneaking the Broadcast Station Programming Surcharge into his Suddenlink monthly bill because the charge was initially less than a dollar. Mr. Lamoree likewise did not notice when Altice first began sneaking the Sports Programming Surcharge into his monthly bill in 2015 because it was relatively small compared to his total bill. It wasn't until the surcharges were increased significantly in recent years that Mr. Lamoree noticed them. However, when Mr. Lamoree eventually noticed the surcharges, which were listed under "Taxes, Fees & Other Charges" on his bill, he reasonably assumed and believed that they were some sort of taxes or government fees that were outside of Altice's control.

64.     Mr. Lamoree did not know, and Altice never told him, that the Broadcast Station

Programming Surcharge and the Sports Programming Surcharge were in fact television service charges for the same service that he was already paying for.

65.     Mr. Lamoree has had the same bundled services since he first signed up. However, over the years (including in the last three years), Mr. Lamoree has called Altice to sign up for new fixed-price promotional periods for his service plan. Each time Mr. Lamoree signed up for a new fixed-price promotional period, the Altice agent he spoke with quoted him a rate for his service plan that did not include the Broadcast Station Programming Surcharge or the Sports Programming Surcharge. The agents he spoke with also never mentioned the existence of either service charge. The agents likewise never told Mr. Lamoree that Altice could, and would, increase his monthly service rate in the middle of the promotional period by increasing the amounts of the Broadcast Station Programming Surcharge and/or the Sports Programming Surcharge.

66.     Mr. Lamoree was not aware that Altice would bill him two additional monthly television service charges (which together totaled $21.65 by 2021) above the promised and quoted service plan price.

67.     Each time Mr. Lamoree signed up for a fixed-rate promotional period, he was relying on Altice's prominent representations regarding the flat, fixed rate for his Suddenlink service plan. Mr. Lamoree did not expect (and Altice did not tell him) that Altice would actually charge more for its television service through the imposition of two disguised service charges—the Broadcast Station Programming Surcharge and the Sports Programming Surcharge. Mr. Lamoree also did not expect (and Altice did not tell him) that Altice could, and would, increase the monthly service rate during the promised fixed-rate promotional period by increasing these disguised service charges. This information would have been material to Mr. Lamoree. If Mr. Lamoree had known that information, he would not have been willing to pay as much for his television service plans, and he would have acted differently.

68.     Mr. Lamoree seeks recovery of the full amount of the Broadcast Station Programming Surcharges and Sports Programming Surcharges charged to him by Altice.

69.     Mr. Lamoree has a legal right to rely now, and in the future, on the truthfulness

and accuracy of Altice's representations and advertisements regarding its service plan prices.

70. Mr. Lamoree continues to subscribe to the same Suddenlink service plan. Mr. Lamoree desires to sign up for different Altice television service plans and/or sign up for another fixed-price promotional period or term contract (e.g., where Altice promises a discounted and fixed service price for a specified period of time). However, Mr. Lamoree wants to be confident that the advertised and quoted price for Altice's television service plans is the true and full price for the services (i.e., that it includes all applicable discretionary monthly service charges). Mr. Lamoree also wants to be confident that Altice is not going to increase the service price during any promised fixed-price period or contract by imposing or increasing discretionary and disguised monthly service charges such as the Broadcast Station Programming Surcharge or the Sports Programming Surcharge. And, if Altice introduces any new discretionary monthly service charge, Mr. Lamoree wants to be confident that Altice will include the amount of that service charge in the advertised and quoted service plan price. Mr. Lamoree will be harmed if, in the future, he is left to guess as to whether Altice's representations are accurate and whether there are omissions of material facts regarding the service plans being advertised and represented to him.

**Plaintiff Kathryn Major**

71. Plaintiff Kathryn Major is an Altice subscriber in Ferndale, California. At all relevant times, Ms. Major has been a citizen and resident of Humboldt County, California.

72. In 2015, Ms. Major called Altice to learn about Suddenlink television, internet, and phone service plans for her new residence in Ferndale, California.

73. The Altice sales agent whom Ms. Major spoke with told her about a Suddenlink "Triple Play" service plan which bundled television, internet, and phone. The sales agent quoted Ms. Major a flat monthly price that was fixed for a promotional period.

74. Based on these representations, Ms. Major reasonably believed that the quoted promotional price for the bundled service plan would be the full price she paid for television, internet, and phone services, and that the price for these services would not increase during the promotional period.

75.     At no point during the phone call did the Altice sales agent disclose to Ms. Major that Altice would charge her a Broadcast Station Programming Surcharge and a Sports Programming Surcharge on top of the advertised and promised monthly price.

76.     Based on the Altice sales agent's representations, Ms. Major ordered the Suddenlink Triple Play bundled service plan for television, internet, and phone.

77.     When Ms. Major started receiving her monthly bills she did not notice the Broadcast Station Programming Surcharge or the Sports Programming Surcharge. Even as Altice increased the two surcharges over the years, Ms. Major did not specifically notice the surcharges, which were lumped together with legitimate taxes and government fees in the "Taxes, Fees & Other Charges" section of her bill. However, Ms. Major did notice that her total monthly bill kept increasing—she just did not know why. Because Altice only increased the surcharges by small amounts each time, Ms. Major simply assumed that the increases were a result of increases to legitimate taxes or government fees that were outside of Altice's control.

78.     For many years, Ms. Major has been signed up for electronic billing, as Altice encouraged her to do. Through this billing process, Ms. Major receives a monthly Suddenlink billing email which states her bill total and informs her when her payment is due. If she wants to see her full monthly bill, she must sign into her online Suddenlink account and locate the PDF version of her bill. Altice's electronic billing, by design, discourages customers from reviewing their full monthly bill.

79.     Ms. Major has changed her service plan at least three times since she first signed up in 2015. Each time she changed her plan, she also signed up for a new fixed-rate promotional period. She always changed her service plan by calling Altice and speaking with an agent.

80.     The first time she changed her service plan, it was to downgrade her television service to the most basic channels offered in order to reduce her monthly bill, which had been steadily increasing each year. Ms. Major is retired and on a fixed income; she cannot afford unexpected increases to her monthly expenses. When Ms. Major called Altice to downgrade her service, the agent quoted her a price that did not include the Broadcast Station

Programming Surcharge (the Sports Programming Surcharge was not charged on the basic television service plan). When Ms. Major received her bill and it was higher than the quoted price, she assumed that the extra amount was due to taxes and government fees outside of Altice's control.

81.    The second time Ms. Major changed her service plan, it was to upgrade her plan. At the time, Ms. Major had learned that Altice was offering a deal for faster internet, plus more channels like in her prior plan, for what she believed to be a good price. However, the advertised price (which was the same price that was later quoted to her over the phone by an Altice agent) did not include the Broadcast Station Programming Surcharge and the Sports Programming Surcharge. Again, after Ms. Major received her bill and it was higher than the quoted price, she assumed that the extra amount was due to taxes and government fees that were outside of Altice's control.

82.    In 2021, after her promotional period expired, Ms. Major once again downgraded her television service plan in order to reduce her monthly bill.

83.    When Ms. Major signed up for Suddenlink services, and when she changed her services and signed up for new promotional periods, she was relying on Altice's prominent representations regarding the flat, fixed rate for her television service plans. Ms. Major did not expect (and Altice did not tell her) that Altice would actually charge more for its television service through the imposition of disguised service charges—the Broadcast Station Programming Surcharge and the Sports Programming Surcharge. This information would have been material to Ms. Major. If Ms. Major had known that information, she would not have been willing to pay as much for the television service plans, and she would have acted differently.

84.    Ms. Major seeks recovery of the full amount of the Broadcast Station Programming Surcharges and Sports Programming Surcharges charged to her by Altice.

85.    Ms. Major has a legal right to rely now, and in the future, on the truthfulness and accuracy of Altice's representations and advertisements regarding its service plan prices.

86.    Ms. Major continues to subscribe to her current Suddenlink service plan. Ms. Major desires to sign up for different Altice television service plans and/or sign up for

another fixed-price promotional period or term contract (e.g., where Altice promises a discounted and fixed service price for a specified period of time). However, Ms. Major wants to be confident that the advertised and quoted price for Altice's television service plans is the true and full price for the services (i.e., that it includes all applicable discretionary monthly service charges). Ms. Major also wants to be confident that Altice is not going to increase the service price during any promised fixed-price period or contract by imposing or increasing discretionary and disguised monthly service charges such as the Broadcast Station Programming Surcharge or the Sports Programming Surcharge. And, if Altice introduces any new discretionary monthly service charge, Ms. Major wants to be confident that Altice will include the amount of that service charge in the advertised and quoted service plan price. Ms. Major will be harmed if, in the future, she is left to guess as to whether Altice's representations are accurate and whether there are omissions of material facts regarding the service plans being advertised and represented to her.

## **CLASS ALLEGATIONS**

87.     Plaintiffs bring this class-action lawsuit on behalf of themselves and the members of the following class (the "Class"):

> **All current and former Altice customers in California who were charged a "Broadcast Station Programming Surcharge," "Broadcast Station Surcharge," and/or a "Sports Programming Surcharge" within the applicable statute of limitations.**

88.     *This Court should apply the discovery rule to extend any applicable limitations period (and the corresponding class period) to the date on which Altice first began charging the Broadcast Station Programming Surcharge, the Broadcast Station Surcharge, or the Sports Programming Surcharge, respectively.* The nature of Altice's misconduct was non-obvious and intentionally concealed from its subscribers. Altice even designed its monthly billing statements to further its scheme and to prevent customers from realizing they were being overcharged. As a result of Altice's intentional misconduct, omissions, and affirmative misrepresentations throughout the customer lifecycle, neither Plaintiffs nor the members of the Class could have, through the use of reasonable diligence, learned of the accrual of their claims

against Altice at an earlier time.

89. Specifically excluded from the Class are Altice and any entities in which Altice has a controlling interest, Altice's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

90. ***Numerosity***. The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs do not know the exact number of Class members prior to discovery. However, based on information and belief, there are more than 25,000 Class members. The exact number and identities of Class members are contained in Altice's records and can be easily ascertained from those records.

91. ***Commonality and Predominance***. Common legal or factual questions affect the members of the Class. These questions predominate over questions that might affect individual Class members. These common questions include, but are not limited to:

a. Whether California law applies to the claims of Plaintiffs and the Class;

b. Whether Altice employed a uniform policy of charging the Broadcast Station Programming Surcharge and the Sports Programming Surcharge to its California customers;

c. What is the nature or purpose of the Broadcast Station Programming Surcharge;

d. What is the nature or purpose of the Sports Programming Surcharge;

e. Whether the Broadcast Station Programming Surcharge is a monthly service fee for providing cable television service;

f. Whether the Sports Programming Surcharge is a monthly service fee for providing cable television service;

g. Whether increases to the Broadcast Station Programming Surcharge and/or the Sports Programming Surcharge are increases to the monthly service price;

h. Whether Altice's policy and practice of advertising and quoting the prices of its television service plans without including the amounts of the Broadcast Station Programming Surcharge and the Sports Programming Surcharge was false, deceptive, or

misleading;

i.       Whether Altice's policy and practice of advertising and representing that the prices of its television service plans were fixed and would not increase during a specified promotional period, when in fact Altice reserved the right to increase service prices during that period by increasing service charges (such as the Broadcast Station Programming Surcharge and the Sports Programming Surcharge) is false, deceptive, or misleading;

j.       Whether Altice employed a uniform policy and practice of listing the Broadcast Station Programming Surcharge and the Sports Programming Surcharge in the "Taxes, Fees & Other Charges" section of the customer bill;

k.       Why Altice decided to list the Broadcast Station Programming Surcharge and the Sports Programming Surcharge in the "Taxes, Fees & Other Charges" section of the bill;

l.       Whether Altice deliberately hid and obscured the nature of the Broadcast Station Programming Surcharge and the Sports Programming Surcharge in its billing statements;

m.       Whether Altice adequately or accurately disclosed the existence of the Broadcast Station Programming Surcharge and the Sports Programming Surcharge, their nature, or their amounts, to the Class; and

n.       Whether Altice's misrepresentations and misconduct alleged herein violated California Civil Code § 1750 *et seq.* (CLRA), California Business & Professions Code § 17500 *et seq.* (FAL), and California Business & Professions Code § 17200 *et seq.* (UCL).

92.     ***Typicality***. Plaintiffs' claims are typical of Class members' claims. Plaintiffs and Class members all sustained injury as a direct result of Altice's standard practices and schemes, bring the same claims, and face the same potential defenses.

93.     ***Adequacy***. Plaintiffs will fairly and adequately protect Class members' interests. Plaintiffs have no interests antagonistic to Class members' interests. Plaintiffs have retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

94.     ***Superiority***. Further, a class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of their claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Defendants' conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial.

95.     By their conduct and omissions alleged herein, Defendants have acted and refused to act on grounds that apply generally to the Class.

96.     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications.

97.     A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, inter alia, the harm suffered by each Class member is too small to make individual actions economically feasible.

98.     Common questions will predominate, and there will be no unusual manageability issues.

99.     Altice is primarily engaged in the business of selling services. Each cause of action brought by Plaintiffs against Altice in this Complaint arises from and is limited to statements or conduct by Altice that consist of representations of fact about Altice's business operations or services that were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, Altice's services or the statement was made in the course of delivering Altice's services. Each cause of action brought by Plaintiffs against Altice in this Complaint arises from and is limited to statements or conduct by Altice for which the intended audience was an actual or potential buyer or customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential buyer or customer.

**CAUSES OF ACTION**

**COUNT I**
**Violation of the Consumers Legal Remedies Act ("CLRA")**
**California Civil Code § 1750 *et seq.***

100.    Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

101.    Each Plaintiff brings this claim in his or her individual capacity, in his or her capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

102.    Each Defendant is a "person," as defined by Cal. Civ. Code § 1761(c).

103.    Plaintiffs and Class members are each "consumers," as defined by Cal. Civ. Code §1761(d).

104.    Altice's television service plans—including service plans that "bundle" television with other services such as internet and telephone—are "services," as defined by Cal. Civ. Code § 1761(b).

105.    The purchase of an Altice television service plan by Plaintiffs and Class members is a "transaction," as defined by Cal. Civ. Code § 1761(e).

106.    Plaintiffs and Class members purchased Altice's television service plans for personal, family, and/or household purposes, as meant by Cal. Civ. Code § 1761(d).

107.    Venue is proper under Cal. Civil Code § 1780(d) because a substantial portion of the transactions at issue occurred in this county. Plaintiffs' declarations establishing that this Court is a proper venue for this action are attached hereto as **Exhibit A.**

108.    By its conduct and omissions alleged herein, Altice has committed unlawful methods, acts or practices, including without limitation by:

    a.    Misrepresenting and concealing the prices of Altice's television service plans;

    b.    Advertising or quoting a television service plan price that did not include applicable monthly service charges such as the Broadcast Station Programming Surcharge and the Sports Programming Surcharge;

c.      Failing to disclose or adequately disclose the existence, nature, and amount of the Broadcast Station Programming Surcharge and the Sports Programming Surcharge when consumers signed up for Altice's television service plans;

d.      Failing to ever adequately or accurately disclose the existence and nature of the Broadcast Station Programming Surcharge and the Sports Programming Surcharge to its subscribers;

e.      Increasing the Broadcast Station Programming Surcharge and the Sports Programming Surcharge on existing subscribers without notice or adequate notice, including in the middle of promised fixed-rate promotional periods or contracts; and

f.      Misrepresenting the nature of the Broadcast Station Programming Surcharge and the Sports Programming Surcharge, including by representing or indicating that they were taxes or government-related charges on customers' monthly bills.

109.   The unlawful methods, acts or practices alleged herein to have been undertaken by Altice were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by Altice did not result from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such error.

110.   Altice's conduct alleged herein has violated the CLRA in multiple respects, including, but not limited to, the following:

a.      Altice represented that its television service plans had characteristics that they did not have (Cal. Civ. Code § 1770(a)(5));

b.      Altice advertised its television service plans with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

c.      Altice misrepresented that its television service plans were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)); and

d.      Altice inserted unconscionable provisions in its consumer agreements, including an arbitration clause which impairs the ability of customers to enforce their legal rights, in violation of California law (Cal. Civ. Code § 1770(a)(19)).

CLASS ACTION COMPLAINT

111.    With respect to any omissions, Altice at all relevant times had a duty to disclose the information in question because, inter alia: (a) Altice had exclusive knowledge of material information that was not known to Plaintiffs and Class members; (b) Altice concealed material information from Plaintiffs and Class members; and (c) Altice made partial representations, including regarding the supposed monthly rate of its television service plans, which were false and misleading absent the omitted information.

112.    Altice's misrepresentations deceive and have a tendency to deceive the general public.

113.    Altice's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

114.    Plaintiffs and Class members reasonably relied on Altice's material misrepresentations, and would not have purchased, or would have paid less money for, Altice's television services had they known the truth.

115.    As a direct and proximate result of Altice's violations of the CLRA, Plaintiffs and Class members have been harmed and lost money or property in the amount of the Broadcast Station Programming Surcharges and the Sports Programming Surcharges they have been charged and paid.

116.    Altice's conduct has caused substantial injury to Plaintiffs, Class members, and the general public.

117.    Plaintiffs lack an adequate remedy at law to prevent Altice's unlawful practices. Plaintiffs will be harmed in the future by their inability to rely on the truthfulness and accuracy of Altice's representations and advertisements regarding its service plan prices. Each Plaintiff desires and intends to sign up for different Altice service plans and/or to sign up for another fixed-price promotional period or contract in the future. However, Plaintiffs want to be confident that the advertised and quoted price for Altice's service plans is the true and full price for the services (i.e., that it includes all applicable discretionary monthly service charges). Plaintiffs also want to be confident that Altice is not going to increase the service price during

any promised fixed-price period by increasing discretionary and disguised monthly service charges, such as the Broadcast Station Programming Surcharge and Sports Programming Surcharge, as Altice has previously done. And, if Altice introduces any new discretionary monthly service charge, Plaintiffs want to be confident that Altice will include the amount of that service charge in the advertised and quoted service plan price. Plaintiffs will be harmed if, in the future, they are left to guess as to whether Altice's representations are accurate and whether there are omissions of material facts regarding the service plans being advertised and represented to them.

118.    Monetary damages are not an adequate remedy at law for *future* harm for the following reasons, without limitation: <u>First</u>, damages are not an adequate remedy for future harm because they will not prevent Altice from engaging in its unlawful conduct in the future. <u>Second</u>, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts would be flooded with future lawsuits by the general public, Class members, and Plaintiffs for future violations of the law by Altice.

119.    Plaintiffs, on behalf of themselves and as private attorneys general, seek public injunctive relief under the CLRA to protect the general public from Altice's false advertisements, misrepresentations, and omissions. Specifically, Plaintiffs seek a permanent public injunction against Altice under the CLRA as follows: (1) enjoin Altice from falsely advertising the prices of its television service plans to members of the general public; (2) enjoin Altice from advertising or quoting a service plan price to members of the general public if that price does not include all applicable discretionary monthly service fees or service charges; and (3) enjoin Altice from representing to members of the public that its own discretionary service charges are taxes, charges imposed to recover costs billed to Altice by the government, pass-through government costs, government or regulatory fees, or charges over which Altice has no control.

120.    In accordance with California Civil Code § 1782(a), on July 27, 2022, Plaintiffs, through counsel, served Defendants with notice of their CLRA violations by USPS certified

1    mail, return receipt requested.

2    121.    If Altice fails to provide appropriate relief for its CLRA violations within 30

3    days from its receipt of Plaintiffs' notification letter, Plaintiffs will amend or seek leave to

4    amend this Complaint to pray for compensatory and punitive damages as permitted by Cal. Civ.

5    Code §§ 1780 and 1782(b), along with attorneys' fees and costs.

6                                    **COUNT II**
                      **Violation of California's False Advertising Law**
7            **California Business and Professions Code § 17500 *et seq.***

8    122.    Plaintiffs reallege and incorporate by reference all paragraphs previously alleged

9    herein.

10    123.    Each Plaintiff brings this claim in his or her individual capacity, in his or her

11    capacity as a private attorney general seeking the imposition of public injunctive relief to

12    protect the general public, and as a representative of the Class.

13    124.    By its conduct alleged herein, Altice has committed acts of untrue and

14    misleading advertising, as defined by and in violation of California Business & Professions

15    Code § 17500, *et seq.*, also known as California's False Advertising Law ("FAL"). These acts

16    include but are not limited to:

17            a.    Misrepresenting and concealing the prices of Altice's television service

18    plans;

19            b.    Advertising or quoting a television service plan price that did not include

20    applicable monthly service charges such as the Broadcast Station Programming Surcharge and

21    the Sports Programming Surcharge; and

22            c.    Failing to disclose or adequately disclose the existence, nature, and

23    amount of the Broadcast Station Programming Surcharge and the Sports Programming

24    Surcharge when consumers signed up for Altice's television service plans.

25    125.    Altice committed such violations of the FAL with actual knowledge that its

26    advertising was misleading, or Altice, in the exercise of reasonable care, should have known

27    that its advertising was misleading.

28    126.    Altice's misrepresentations deceive and have a tendency to deceive the general

public.

127.     Altice's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

128.     Plaintiffs and Class members reasonably relied on Altice's material misrepresentations, and would not have purchased, or would have paid less money for, Altice's television services had they known the truth.

129.     By its conduct alleged herein, Altice received more money from Plaintiffs and Class members than it should have received, and that money is subject to restitution.

130.     As a direct and proximate result of Altice's violations of the FAL, Plaintiffs and Class members have been harmed and lost money or property in the amount of the Broadcast Station Programming Surcharges and the Sports Programming Surcharges they have been charged and paid.

131.     Altice's conduct has caused substantial injury to Plaintiffs, Class members, and the general public.

132.     Plaintiffs lack an adequate remedy at law to prevent Altice's unlawful practices as previously discussed in Paragraph 117 above.

133.     Monetary damages are not an adequate remedy at law for future harm, as previously discussed in Paragraph 118 above.

134.     Plaintiffs, on behalf of themselves and as private attorneys general, seek public injunctive relief under the FAL to protect the general public from Altice's false advertisements, misrepresentations, and omissions. Specifically, Plaintiffs seek a permanent public injunction against Altice under the FAL as follows: (1) enjoin Altice from falsely advertising the prices of its television service plans to members of the general public; (2) enjoin Altice from advertising or quoting a service plan price to members of the general public if that price does not include all applicable discretionary monthly service fees or service charges; and (3) enjoin Altice from representing to members of the public that its own discretionary service charges are taxes, charges imposed to recover costs billed to Altice by the government, pass-through government

costs, government or regulatory fees, or charges over which Altice has no control.

135.    Plaintiffs further seek an order granting restitution to Plaintiffs and Class members in an amount to be proven at trial. Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

**COUNT III**
**Violation of California's Unfair Competition Law**
**California Business and Professions Code § 17200 *et seq*.**

136.    Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

137.    Each Plaintiff brings this claim in his or her individual capacity, in his or her capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

138.    California Business & Professions Code § 17200, *et seq.*, also known as California's Unfair Competition Law (UCL), prohibits any unfair, unlawful, or fraudulent business practice.

139.    Altice has violated the UCL by engaging in the following ***unlawful*** business acts and practices:

    a.    Making material misrepresentations in violation of Cal. Civ. Code §§ 1770(a)(5), (9), and (16) (the CLRA);

    b.    Inserting unconscionable provisions in its consumer agreements, including, but not limited to, an arbitration clause which impairs the ability of customers to enforce their legal rights, in violation of California law (Cal. Civ. Code § 1770(a)(19));

    c.    Making material misrepresentations in violation of Cal. Bus. & Prof. Code § 17500 *et seq.* (the FAL); and

    d.    Engaging in deceit in violation of Cal Civ. Code §§ 1709–1710.

140.    Altice has violated the UCL by engaging in the following ***unfair*** and ***fraudulent*** business acts and practices:

    a.    Misrepresenting and concealing the prices of Altice's television service plans;

b.     Advertising or quoting a television service plan price that did not include applicable monthly service charges such as the Broadcast Station Programming Surcharge and the Sports Programming Surcharge;

c.     Failing to disclose or adequately disclose the existence, nature, and amount of the Broadcast Station Programming Surcharge and the Sports Programming Surcharge when consumers signed up for Altice's television service plans;

d.     Failing to ever adequately or accurately disclose the existence and nature of the Broadcast Station Programming Surcharge and the Sports Programming Surcharge to its subscribers;

e.     Increasing the Broadcast Station Programming Surcharge and the Sports Programming Surcharge on existing customers without notice or adequate notice, including in the middle of promised fixed-rate promotional periods or contracts;

f.     Preventing existing customers from freely canceling their services after learning the actual total monthly amount they are charged or learning of the Broadcast Station Programming Surcharge or the Sports Programming Surcharge or increases to them; and

g.     Misrepresenting the nature of the Broadcast Station Programming Surcharge and the Sports Programming Surcharge, including by representing or indicating that they were taxes or government-related charges on customers' monthly bills.

141.    With respect to omissions, Altice at all relevant times had a duty to disclose the information in question because, inter alia: (a) Altice had exclusive knowledge of material information that was not known to Plaintiffs and the Class; (b) Altice concealed material information from Plaintiffs and the Class; and (c) Altice made partial representations, including regarding the supposed monthly prices of its services, which were false and misleading absent the omitted information.

142.    Altice's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

143.    Altice's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the

information in making purchase decisions.

144.    Altice intentionally deceived Plaintiffs and Class members.

145.    Plaintiffs and Class members reasonably relied on Altice's material misrepresentations, and would not have purchased, or would have paid less money for, Altice's television services had they known the truth.

146.    By its conduct alleged herein, Altice received more money from Plaintiffs and Class members than it should have received, and that money is subject to restitution.

147.    As a direct and proximate result of Altice's unfair, unlawful, and fraudulent conduct, Plaintiffs and Class members lost money in the amount of the Broadcast Station Programming Surcharges and Sports Programming Surcharges they have been charged and paid.

148.    Altice's conduct alleged herein is immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially injurious to Plaintiffs, Class members, and the general public. Perpetrating a years-long scheme of misleading and overcharging customers is immoral, unethical, and unscrupulous. Moreover, Altice's conduct is oppressive and substantially injurious to consumers. By its conduct alleged herein, Altice has improperly extracted tens of millions of dollars from the Class. There is no utility to Altice's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by Altice's conduct alleged herein.

149.    Plaintiffs lack an adequate remedy at law to prevent Altice's unlawful practices, as previously discussed in Paragraph 117 above.

150.    Monetary damages are not an adequate remedy at law for future harm, as previously discussed in Paragraph 118 above.

151.    Plaintiffs, on behalf of themselves and as private attorneys general, seek public injunctive relief under the UCL to protect the general public from Altice's false advertisements, misrepresentations, and omissions. Specifically, Plaintiffs seek a permanent public injunction against Altice under the UCL as follows: (1) enjoin Altice from falsely advertising the prices of its television service plans to members of the general public; (2) enjoin Altice from advertising

or quoting a service plan price to members of the general public if that price does not include all applicable discretionary monthly service fees or service charges; and (3) enjoin Altice from representing to members of the public that its own discretionary service charges are taxes, charges imposed to recover costs billed to Altice by the government, pass-through government costs, government or regulatory fees, or charges over which Altice has no control.

152.    Plaintiffs further seek an order granting restitution to Plaintiffs and Class members in an amount to be proven at trial. Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

## **PRAYER FOR RELIEF**

**Public Injunctive Relief:**

A.    In order to prevent injury to the general public, Plaintiffs individually and as private attorneys general, request that the Court enter a public injunction against Altice under the CLRA, FAL, and UCL as follows:

1.    Permanently enjoin Altice from falsely advertising the prices of its television service plans[8] to members of the general public;

2.    Permanently enjoin Altice from advertising or quoting a service plan price to members of the general public if that price does not include all applicable discretionary monthly service fees or service charges;

3.    Permanently enjoin Altice from representing to members of the public that its own discretionary service charges are taxes, charges imposed to recover costs billed to Altice by the government, pass-through government costs, government or regulatory fees, or charges over which Altice has no control; and

4.    Retain jurisdiction to monitor Altice's compliance with the permanent public injunctive relief.

---

[8] The term "television service plan" as used in this Complaint includes a service plan that "bundles" television with other services such as internet or phone.

CLASS ACTION COMPLAINT

**Individual and Class Relief:**

B.      On behalf of themselves and the proposed Class, Plaintiffs request that the Court order relief and enter judgment against Altice as follows:

1.      Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiffs and their counsel to represent the Class;

2.      Order that the discovery rule applies to extend any applicable limitations period (and the corresponding class period) for the Class to the dates on which Altice first began charging the Broadcast Station Programming Surcharge or the Sports Programming Surcharge, respectively;

3.      Declare that Altice's conduct alleged herein violates the CLRA, FAL, and UCL;

4.      Order disgorgement or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Altice obtained, directly or indirectly, from Plaintiffs and Class members as a result of the unlawful conduct alleged herein;

5.      Order Altice to pay court attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

6.      Grant such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Each Plaintiff, individually, as a private attorney general to protect the general public, and as a class representative on behalf of all others similarly situated, demands a trial by jury on all issues so triable.

DATED:  July 27, 2022

Presented by:

HATTIS & LUKACS

By: _____
Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Stephen P. DeNittis, Esq.*
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com

*Attorneys for Plaintiffs*
*And the Proposed Class*

*Pro hac vice application to be submitted.*

CLASS ACTION COMPLAINT